IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MAGIAN HARDY**                                                                                  **PLAINTIFF**

v.                          Case No. 4:25-cv-00135-LPR

**BOARD OF TRUSTEES OF THE**
**UNIVERSITY OF ARKANSAS –**
**PINE BLUFF**                                                   **DEFENDANT**

## ORDER

Plaintiff Magian Hardy was a Patrol Sergeant at the University of Arkansas at Pine Bluff (UAPB).[1] She claims that the UAPB Board of Trustees engaged in race-based and sex-based discrimination by terminating her.[2] For the reasons discussed below, Defendant's Motion to Dismiss is GRANTED.[3]

On October 24, 2024, there was an active shooter incident on campus.[4] Ms. Hardy was the only officer present in the parking lot where the shooting incident took place.[5] It was a hectic and chaotic situation with multiple shooters and students running for cover.[6] When the shooting began, Ms. Hardy was driving a police vehicle that did not have a siren or a radio.[7] Ms. Hardy used her cell phone to call a lieutenant (Lt. Johnson) for back-up as Ms. Hardy was motioning for students to take cover.[8]

---

[1] Am. Compl. (Doc. 6) ¶ 14.

[2] *Id.* ¶¶ 2, 39.

[3] Doc. 7.

[4] Am. Compl. (Doc. 6) ¶ 16.

[5] *Id.* ¶ 18.

[6] *Id.*

[7] *Id.* ¶ 17.

[8] *Id.*

After the incident, a different lieutenant (Lt. Haase) ordered Ms. Hardy to prepare a report on the incident.[9] Ms. Hardy began the report, but then she saved it before she was finished in order to get additional incident details from Lt. Johnson.[10] Before Lt. Johnson could access the report to review it and/or provide additional details, Lt. Haase locked it.[11] Lt. Johnson told Lt. Haase that this early locking of the partially prepared report was not standard.[12] Lt. Johnson told Lt. Haase that Ms. Hardy reviewed all her reports with Lt. Johnson prior to finally submitting them.[13] Additionally, back in November of 2023, the UAPB Chief of Police directed that all reports should be completed *by the end of an officer's shift*.[14] The bottom line is that Ms. Hardy was not done with her report by the time Lt. Haase locked it and there are indications that Lt. Haase knew this.

Lt. Haase recommended Ms. Hardy for termination on two bases. First, "Lt. Haase recommended [Ms. Hardy] for termination based on statements . . . in her unfinished report which he believed were contradicted by video footage of the incident."[15] Ms. Hardy does not dispute that her report included inaccurate statements.[16] But she says that "[h]ad [she] been allowed to finish the report by the end of her shift, without Lt. Haase locking [it early], [she] would have been able to review the video footage and ensure her description of this incident [was] accurate and correct."[17] Second, "Lt. Haase recommended [Ms. Hardy] for termination because he falsely

---

[9] *Id.* ¶ 19.

[10] *Id.*

[11] *See id.* ¶ 20.

[12] *Id.* ¶ 21.

[13] *Id.*

[14] *Id.* ¶ 15.

[15] *Id.* ¶ 26.

[16] The Amended Complaint implies, but does not definitively state, that the inaccurate statements were limited to whether a shooter was inside of a particular car or instead was behind that car. *See id.* ¶¶ 24–25.

[17] *Id.* ¶ 27.

believed [she] should have taken additional actions to engage the shooter, when [she] was the only officer present in the parking lot, she had no radio to call for back-up, and multiple students were running through the parking lot during the incident."[18]

All of the foregoing historical facts come from Ms. Hardy's Amended Complaint and must (at this stage) be taken as true.[19] But none of the foregoing suggests in any way that Ms. Hardy's termination was based on her being black or being female. The relevant question is not whether Lt. Haase was wrong to lock the report early or whether Lt. Haase was wrong to fault Ms. Hardy for failing to engage the shooters. The relevant question is whether anything in the Amended Complaint makes it plausible that Ms. Hardy's termination was motivated in full or in part by her race or sex.[20] The answer to that question is no.

Ms. Hardy's Amended Complaint alleges that "Lt. Haase's reasons for terminating [Ms. Hardy] were pretextual" and that "[h]e habitually subjected [b]lack female employees to disparate discipline as compared to [w]hite and male officers who had serious disciplinary issues."[21] But those allegations are quintessential examples of conclusory allegations that a court need not, and should not, adopt as true even at the motion-to-dismiss stage.[22] To her credit, Ms. Hardy does try to put some meat on the bone. In paragraphs 31–34 and 36 of the Amended Complaint, Ms. Hardy identifies officers that (1) are not black women, and (2) did not get significant discipline despite either allegations of policy violations or actual policy violations. But

---

[18] *Id.* ¶ 28.

[19] *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)).

[20] *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007)); *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004).

[21] Am. Compl. (Doc. 6) ¶ 30.

[22] *See Wiles*, 280 F.3d at 870 (citing *Westcott*, 901 F.2d at 1488).

none of these examples involve anything like the conduct for which Ms. Hardy was allegedly terminated. Accusations of sexual harassment or failing a drug test are apples compared to the orange of failing to engage active shooters. In short, the alleged examples of dissimilar treatment are not enough to make it plausible that Ms. Hardy's termination was motivated (in full or in part) by race or sex discrimination.[23]

As currently pled, Ms. Hardy has not plausibly alleged that race-based or sex-based discrimination motivated her termination.[24] Although she has already amended her Complaint once in an attempt to add more fact allegations, the Court will give her one more chance to do so. Ms. Hardy has 21 days from the date of this Order to file a Motion for Leave to File a Second Amended Complaint if she believes that she can offer additional facts that would remedy the problems identified by the Court. If Ms. Hardy does not file such a Motion, the Court will dismiss her case without prejudice. If she does file such a Motion, Defendant may oppose it on futility grounds if Defendant believes the new amendment fails to fix the defects identified by this Order.[25]

IT IS SO ORDERED this 13th day of May 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[23] It is true that the Amended Complaint alleges that "[a]side from [Ms. Hardy], Defendant has terminated two [b]lack female employees with no previous disciplinary issues." Am. Compl. (Doc. 6) ¶ 35. But we know nothing at all about when or why these alleged terminations occurred. Without such information, this allegation adds nothing to the mix. And the same is true of the bare-bones allegation that "[Lt.] Haase has been accused of sexual harassment by a [b]lack female [employee] . . . ." *Id.* ¶ 37.

[24] At the motion-to-dismiss stage, a plaintiff need **not** allege facts that would make out a prima facie case at summary judgment. *Cf. Iqbal*, 556 U.S. at 677–78 (citing *Twombly*, 550 U.S. at 555–57). The *Iqbal-Twombly* standard is far lower (and different) than that. *See id.* But Ms. Hardy can't surmount even this lower (and different) standard. The Court reads the Defendant's brief as merely saying that the summary-judgment prima facie elements are relevant to—but not controlling of—the motion-to-dismiss analysis. *See* Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 8) at 4–5. That's a fine way to put it.

[25] This is not meant to limit the grounds on which Defendant may oppose the Motion for Leave if it is filed.